UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIVE FACE ON WEB, LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>EMERSON CLEANERS, INC.,<br><br>       Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>Civil No. 14-00182 (JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

LAW OFFICE OF JASON RABINOVICH, PLLC
By:  Jason L. Rabinovich, Esq.
1700 Market Street
Suite 1005
Philadelphia, PA 19103
      Counsel for Plaintiff

BAKOS & KRITZER
By:  Noam J. Kritzer, Esq.
147 Columbia Turnpike
Florham Park, NJ 07932
      Counsel for Defendant


**IRENAS,** Senior United States District Judge:

     This is a copyright infringement suit.[1]  Before the Court is Defendant Emerson Cleaners, Inc.'s ("Emerson") Motion to Dismiss for failure to state a claim for either direct or indirect copyright infringement.  For the reasons set forth below, the Motion will be

---

[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

1

granted as to LFOW's contributory infringement claim and denied in all other respects.

## I.

This is the first opinion in a series of three, all addressing similar factual and legal issues, and all involving Plaintiff LFOW's claims of copyright infringement.[2]

LFOW owns and develops software and video technology, which it licenses to individuals and businesses for use in online advertising. (Am. Compl. ¶ 11-12)  LFOW's customers use the software to customize a "live" walking and talking "[video] spokesperson" to direct a website visitor's attention to particular products or aspects of the website.  (Id. ¶ 12)  LFOW allegedly is a "leading developer" of this technology.  (Id. ¶ 11)  LFOW's software and video player are alleged to be copyrighted work. (Id. ¶ 18)[3]

---

[2] LFOW originally filed one copyright infringement complaint against four Defendants: Emerson Cleaners, Inc. (the Defendant in this case); Unlimited Office Solutions LLC, d/b/a Green Technology Services; Innovative Pain Management, LLC; and Linvas Corporation t/a Sunrise Gentlemen's Club.
    Magistrate Judge Donio later ordered the cases severed from each other, although they are being administered as related cases.
    Innovative Pain Management has answered the complaint and has no motions presently pending.  The other three Defendants have each moved separately to dismiss.

[3] The Amended Complaint alleges that the "LFOW Software Package consists of three parts."  (¶ 18)  The "video presentation" is alleged to be "protectable" under "U.S. copyright law"; the "LFOW Software" is alleged to be "a copyrighted work, duly registered with

Emerson, which operates a dry cleaning business, had a video host that would appear when a person visited Emerson's website. (Am. Compl. ¶ 37)  Emerson undisputedly did not obtain this capability from LFOW, which licenses its software packages to customers for a fee.  Instead, the parties apparently do not dispute that Emerson obtained the live spokesperson capability from Tweople, Inc., which LFOW has separately sued for copyright infringement in the Middle District of Florida.[4]

According to the LFOW v. Tweople complaint (Exhibit B to Emerson's Motion to Dismiss), Tweople blatantly copied LFOW's source code and began offering live spokesperson services to Tweople's customers using LFOW's source code.  The exact mechanics of how Emerson was able to operate the video host on its website is not clear at this point in the case.  The Amended Complaint merely

---

the U.S. Copyright Office"; and the "LFOW video player" is alleged to be "a copyrighted work."  (Id.)

[4] *See Live Face on Web, LLC v. Tweople, Inc., et al.*, Civil Case No. 6:14-cv-44 (M.D. Fla.).  LFOW filed the Florida suit on the same day this suit was filed, although different counsel represent LFOW in the two suits.  The Florida litigation has progressed further than the cases in this Court.  Most relevantly, the presiding judge in the Florida suit, Chief District Judge Anne C. Conway, denied three motions to dismiss filed by Tweople's customers (three of 20 such defendants in the Florida suit).  The issues raised by those Motions to Dismiss are similar to the issues raised by the instant Motion.

alleges that Emerson "used" an "unlawful version of LFOW's Software." (Am. Compl. ¶ 35)[5]

What allegedly happened when a person visited Emerson's website is particularly relevant to the instant Motion. According to the Amended Complaint, ¶ 15:

> When a web browser is directed to a website which has incorporated LFOW Technology, the website distributes a copy of the LFOW Software, which is automatically downloaded by the web browser into cache and/or computer memory and/or hard drive, allowing the launch of the specified video using the LFOW Software. As a result, every time a website with LFOW's Software is visited, a copy of LFOW's Software is distributed to the website visitor.

The Amended Complaint asserts one claim for "copyright infringement." However, that one "copyright infringement" claim states that it "is an action under 17 U.S.C. § 501 for direct, indirect, vicarious, and/or contributory infringement of registered copyright(s)." (Am. Compl. ¶ 78)

**II.**

---

[5] Emerson vigorously argues that this alleged fact is not true, insofar as the alleged infringing source code actually resided on servers owned by Tweople. According to Emerson, it "merely provide[d] a website which allow[ed] the customers to receive the allegedly infringing content from Tweople, Inc." (Moving Brief, p. 3) Such argument, however, is better left for summary judgment. Unlike the Complaints in the related cases against Defendants Green Technologies and Linvas Corp., the Amended Complaint in this case makes no reference to Tweople.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all factual allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

The Court addresses first the direct infringement claim, and then the indirect infringement claims.

### A.

5

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Only the second element is at issue in this motion.

"Copying is a shorthand reference to the act of infringing any of the copyright owner's . . . exclusive rights set forth at 17 U.S.C. § 106." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (internal citation and quotation omitted). The exclusive rights implicated in this suit are the first three enumerated by § 106: the right "(1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[6]

Emerson argues that the Amended Complaint fails to state a claim for direct infringement because the facts alleged cannot support a legal conclusion that: (1) Emerson (as opposed to Tweople); (2) copied (as opposed to merely used) LFOW's copyrighted software.

As to the first issue, the Court already noted at fn. 5 *supra*-- the Amended Complaint alleges that Emerson used the software / source code at issue. The details of the interactions or transactions

---

[6] The other enumerated rights pertain only to the arts-- i.e., "literary, musical, dramatic, . . . choreographic works" and the like-- and "sound recordings." 17 U.S.C. § 106(4)-(6).

between Tweople and Emerson may be explored during discovery. Emerson's argument concerning Tweople is not based on any fact alleged within the four corners of the Amended Complaint and therefore is inappropriately considered on a Motion to Dismiss.

As to the second issue, Emerson argues that the Amended Complaint does not allege anywhere that Emerson "copied" or "reproduced" LFOW's software. But of course that simple observation is not dispositive of the issue, particularly when the material alleged to have been infringed is computer code.

As the case law demonstrates, determining when digital media on the Internet is "copied" is a fact-intensive inquiry. While the Third Circuit has not addressed the issue, other Courts of Appeals have.

For example, the Second Circuit has held, in a thorough and well-reasoned opinion, that copying of digital information for purposes of copyright infringement liability occurs when the copyrighted work "is placed in a medium such that it can be perceived, reproduced, etc., from that medium," and is "embodied [in the medium] for a period of more than transitory duration." *Cartoon Network LP v. Twentieth Century Fox Film Corp.*, 536 F.3d 121 (2d Cir. 2008).

Similarly, the Ninth Circuit has held that "the loading of software into [a computer's] RAM [random access memory] creates a copy under the Copyright Act." *Mai Systems Corp. v. Peak Computer,*

*Inc.*, 991 F.2d 511, 519 (9th Cir. 1993); *see also id.* at 518 ("MAI has adequately shown that the representation created in the RAM is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.").[7]

By alleging that Emerson's website causes "a copy of the LFOW Software" to be "automatically downloaded"[8] "into" the website visitor's "cache and/or computer memory and/or hard drive," LFOW has sufficiently alleged that Emerson has caused the copying of the software. The specific technological mechanism by which this is accomplished may be explored during discovery.

Moreover, completely independent from the copying issue-- which implicates the exclusive right granted by § 106(1) (the right to "reproduce")-- is the distribution issue, which implicates § 106(3). Even if the Court were to rule that LFOW had failed to sufficiently allege that Emerson reproduced the computer code (which the Court does not rule), the Amended Complaint sufficiently alleges facts supporting the plausible conclusion that Emerson's website distributed copies of the code to each of the website's visitors.

---

[7] *Cited with approval in* Levey v. Brownstone Inv. Group, LLC, 2014 U.S. App. LEXIS 20616 at *7 (3d Cir. Oct. 23, 2014); *see also Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 336-337 (4th Cir. 2009) (following *MAI Systems*).

[8] The Oxford English Dictionary defines "download" as "to copy (data) from one computer to another (now usually from a web server, via the Internet)."

Indeed, by arguing that "Emerson merely provides a website which allows the customers to receive the allegedly infringing content from Tweople, Inc.," (Moving Brief p. 3), Emerson seems to implicitly concede that the Amended Complaint pleads that Emerson distributed the code from Tweople to its website visitors. *See Sony Music Entertainment v. Cloud*, 2009 U.S. Dist. LEXIS 45427 at *8-9 (E.D. Pa. May 29, 2009) (holding that an allegation that "Defendant has engaged in ongoing acts of downloading and/or distributing to the public the copyrighted recordings" sufficiently stated a violation of the exclusive right to distribute copyrighted material).[9]

Lastly, as to both reproducing and distributing, Emerson argues that the Amended Complaint fails to allege that Emerson engaged in any "volitional conduct." Here again, Emerson invites the Court to decide at this early stage of the case, what its website did or did not do as a technical matter. The Court will not do so.

The "volitional conduct" requirement for direct copyright infringement liability focuses on "the volitional conduct that causes the copy to be made." *Cartoon Network*, 536 F.3d at 131. The requirement originated with a now-famous case that held that an Internet Service Provider (ISP) (i.e., the company that provides

---

[9] As discussed at length during oral argument on the Motion, it may be the case that Emerson's website does nothing other than connect its visitors directly to Tweople's server and then effectively steps out of the transaction, leaving the visitor and Tweople digitally interacting only with each other. However, such a determination cannot be made on the pleadings alone.

Internet access, usually for a fee) cannot directly infringe copyrighted material because "there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." *Religious Tech. Ctr. v. Netcom On-Line Comm. Svs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995); *see also Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007) ("'[an] ISP should not be found liable as a direct infringer when its facility is used by a subscriber to violate a copyright without intervening conduct of the ISP. . . . When an electronic infrastructure is designed and managed as a conduit of information and data that connects users over the Internet, the owner and manager of the conduit hardly 'copies' the information and data in the sense that it fixes a copy in its system of more than transitory duration.'") (quoting *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004)).

In this case, Emerson clearly is not an ISP.  Moreover, LFOW alleges that Emerson, by operating its own website, is more than just a conduit of information; that its website operates to cause the downloading of LFOW software.  This allegation is sufficient to satisfy the volitional conduct or causation element of a direct infringement claim.  The specifics of how Emerson's website caused the downloading of LFOW software may be explored during discovery.

LFOW has stated a claim for direct copyright infringement against Emerson.  Emerson's Motion to Dismiss the direct infringement claim will be denied.

**B.**

LFOW has also sufficiently stated a claim for vicarious copyright infringement, but not contributory copyright infringement.

**1.**

"A plaintiff alleges a claim for vicarious copyright infringement when he alleges that the defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'"  *Parker v. Google*, 242 F. App'x 833, 837 (3d Cir. 2007) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "'Financial benefit exists where the availability of infringing material acts as a draw for customers.'  There is no requirement that the draw be 'substantial.'" *Id.* (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)).

In arguing that LFOW has failed to state a claim for vicarious infringement, Emerson again relies on its assertion that Tweople actually did the copying, and therefore argues that Emerson could not have had the right or ability to supervise Tweople's infringing

11

activity. Here again, Emerson relies on facts outside the allegations of the Amended Complaint.

LFOW's Amended Complaint alleges that Emerson's website caused LFOW's software to be copied and caused copies to be distributed. It is certainly plausible that Emerson had the right and ability to supervise the operation of its own website.

At oral argument, Emerson argued that the question was not whether it had the ability to control its own website, but rather, whether it had the ability to supervise Tweople's alleged copying of LFOW's code. Emerson cites no authority for such a narrow interpretation of vicarious infringement law. Indeed, it appears the law is not so narrow. As the Second Circuit has observed, "a person who has *promoted or induced* the infringing acts of the [direct infringer] has been held jointly and severally liable as a 'vicarious' infringer." *Gershwin Publ'g Corp.*, 443 F.2d at 1163 (emphasis added).

Further, as Nimmer on Copyright explains, "vicarious liability exceeds the traditional scope of the master-servant theory -- the proprietor of a dance hall is liable for infringing performances of the orchestra, even if the orchestra is hired as an independent contractor and exclusively determines the music to be played." 3 Nimmer on Copyright § 12.04. In this case, at least at the pleadings stage, it appears that Emerson is analogous to the dance hall proprietor; it provides a forum-- its website-- for visitors to come

and receive an unlawful copy of the copyrighted material.  Thus, Emerson's argument fails.

Likewise, Emerson's financial benefit argument fails.  The Amended Complaint alleges that the live talking person on Emerson's website "was a powerful sales and advertising tool for Defendant to generate revenues and profits."  (Amend. Compl. ¶ 38)  "[T]he use of the infringing source code allows Defendants to more effectively promote and sell their product(s) and/or service(s) on their website by capturing, holding and prolonging attention of the average online visitor."  (Amend. Compl. ¶ 84)  These allegations plausibly support a conclusion that the availability of infringing material acted as a "draw for customers."  *Parker*, 242 F. App'x at 837; *see generally* 3 Nimmer on Copyright § 12.04 ("courts seem to have relaxed [the financial benefit] standard over time. . . . Indeed, [one district court has held] that, even absent the receipt of any revenues whatsoever, a future hope to 'monetize' suffices.  It seems scarcely an exaggeration to posit that an obvious and direct financial interest is now understood to encompass a possible, indirect benefit."); *see also Live Face on Web, LLC v. Howard Stern Productions, Inc.*, 2009 U.S. Dist LEXIS 21373 at *11-12 (E.D. Pa. March 17, 2009) (holding that LFOW had stated a claim for vicarious infringement where complaint alleged that the video spokesperson was "designed to and did draw and prolong visitors' attention to the

13

website" and "increased the amount of time users would spend on the website.").

The Motion to Dismiss will be denied as to the vicarious infringement claim.

### 2.

To allege a claim of contributory copyright infringement, a plaintiff must allege: (1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement. *Parker*, 242 Fed. Appx. at 837 (citing *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984)).

Emerson only challenges the second element, arguing that LFOW has merely pled conclusions and not facts supporting a plausible inference that Emerson knew that Tweople was infringing LFOW's copyright.

In response, LFOW argues that the allegation that Emerson's website directed visitors to the location of the infringing code could support a plausible inference that Emerson knew that the code was impermissibly copied.  The Court disagrees.  This single allegation is insufficient to support a conclusion of actual or constructive knowledge, or willful blindness.

14

Even when viewing the allegations of the Amended Complaint as a whole, nothing about the circumstances or context within which the claims are alleged to have arisen suggests that Emerson-- a dry cleaning business who operated a website designed to attract dry cleaning customers-- knew or should have known, or deliberately took steps not to know, that the software it was using was copyrighted by someone other than the company from which it obtained the software.

Accordingly, Emerson's Motion to Dismiss will be granted as to the contributory infringement claim.

**IV.**

For the above-stated reasons, Emerson's Motion to Dismiss will be granted as to LFOW's contributory infringement claim and denied in all other respects.[10]

---

[10]  The Court has not ignored Emerson's observation of the seeming unfairness of this result.  As counsel very pragmatically observed at oral argument, Emerson is a small business that provides dry cleaning services.  For a one-time fee of a few hundred dollars, Emerson contracted with Tweople to provide "live" spokesperson capabilities on Emerson's website and nothing more.  Nothing about the facts of this case suggests that Emerson had any reason to know that, or should have inquired whether, Tweople had allegedly copied LFOW's computer code.  As both LFOW and Emerson seem to agree, the alleged principal wrongdoer here is not Emerson, but Tweople.  Yet, as a result of this decision, Emerson must now engage in litigation to defend this suit.  Even if Emerson ultimately prevails at summary judgment or trial, the costs to Emerson-- in terms of both time and money-- seem quite disproportionate in view of the simple transaction that led to this suit.
   Nonetheless, applying copyright law to computer code is tricky business, and this Court has very little controlling precedent with which to work.  Depending on the ultimate outcome of this suit,

An appropriate Order accompanies this Opinion.

Date:  December 11, 2014

                                    ___s/ Joseph E. Irenas_____
                                    JOSEPH E. IRENAS, S.U.S.D.J.

---

perhaps the Court of Appeals will have an opportunity to address this issue.